UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHRISTIANA MACNEILL, et al.,            Case No. 1:11-cv-171
         Plaintiffs,                           Litkovitz, M.J.

vs.

MARTY WYATT, et al.,
         Defendants.                        **ORDER**

This civil action is before the Court on defendants' motion for partial summary judgment (Doc. 34), plaintiffs' memorandum in opposition (Doc. 36), and defendants' reply memorandum in support of their motion (Doc. 37). Defendants Marty Wyatt and Bulk First, LLC (Bulk First) move for summary judgment on the claims for punitive damages asserted by plaintiffs Christiana MacNeill and Grant MacNeill. For the following reasons, defendants' motion for partial summary judgment is granted.

**I. Introduction**

Plaintiffs originally filed this lawsuit in the Hamilton County, Ohio Court of Common Pleas. (Docs. 2, 3). Defendants subsequently removed the case to federal court pursuant to 28 U.S.C. § 1441. (Doc. 1). This court has jurisdiction over the lawsuit based on diversity of citizenship pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

This case arises from a motor vehicle accident that occurred on December 29, 2008, on Interstate 75 in Cincinnati, Ohio. (Doc. 3, ¶¶ 8-10). The accident happened when a truck owned by defendant Bulk First and operated by defendant Wyatt struck a vehicle in which plaintiff

Christiana MacNeill was a passenger. (*Id.*). Plaintiffs allege that Wyatt's conduct constitutes negligence or negligence per se as well as reckless, wanton, and willful disregard for "the motoring public." (*Id.*, ¶¶ 11, 13). Christiana MacNeill alleges that she sustained permanent injuries in the accident for which she seeks compensatory damages. (*Id.*, ¶ 14). Christiana MacNeill also seeks punitive damages from both defendants. (*Id.*, p. 4). Plaintiff Grant MacNeill brings a claim for loss of consortium for which he seeks compensatory damages from both defendants. (*Id.*, ¶¶ 21-23, p. 6).

In addition, plaintiffs seek compensatory damages from Bulk First for negligently entrusting its truck to Wyatt when it knew or should have known that Wyatt was incapable of properly operating the vehicle. (*Id.*, ¶¶ 16-20, p. 5). Plaintiffs also seek compensatory and punitive damages from Bulk First for the negligent hiring and retention of Wyatt, alleging that Bulk First should have known Wyatt was not properly qualified, licensed, trained, or instructed to safely operate the truck at the time of the accident; that its negligence caused the serious and permanent injuries plaintiff Christiana MacNeill sustained; and that Bulk First's conduct constitutes negligence, gross negligence, and recklessness, as well as wanton and willful misconduct. (*Id.*, ¶¶ 24-31, p. 7).

## II. Undisputed Facts

On December 29, 2008, plaintiff was a passenger in a 2004 Pontiac Montana owned and operated by her husband, plaintiff Grant MacNeill. (Doc. 36, Plaintiff's Memo. Opp., Exh. 1, Report of Mark A. Rice, p. 2). Plaintiffs were traveling in the vehicle on southbound Interstate 75 in Cincinnati, Ohio, when traffic came to a stop. (Doc. 34, Defendants' MSJ, Exh. 1, Plaintiffs' Interrogatory Answer No. 2). Plaintiffs' vehicle was able to stop in time, but the truck behind them, which was operated by Wyatt, did not stop in time. (*Id.*). Wyatt's truck collided

with the rear of plaintiffs' vehicle. (Doc. 36, Exh. 1, Rice Report, p. 2).

Wyatt had attended truck driving school in 1989 and obtained his Commercial Driver's License (CDL) prior to April of 1992. (Doc. 36, Plaintiffs' Memo. Opp., Exh. 2, Report of Robert Reed, p. 2). At the time of the accident, Wyatt held a CDL (Class A) issued by the State of Indiana. (*Id.*; Doc. 34, Exh. 2, Wyatt's Interrogatory Answer No. 23). According to Reed, Wyatt "was an experienced tractor-trailer driver [who] had operated large trucks for approximately 10 years at the time of [the] collision. He operated [them] from 1989 to 1997 . . . and was hired as a driver at Bulk First, LLC in May of 2006. . . ." (Doc. 36, Exh. 2, Reed Report, p. 2). Wyatt has attended yearly safety meetings for commercial driving since at least 2008. (Doc. 34, Exh. 2, Wyatt Interrogatory Answer No. 19).

### III. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Under Rule 56(c), a grant of summary judgment is proper if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co*, 475 U.S. at 587.

## IV. Punitive damages under Ohio law

Because this case is brought under the Court's diversity jurisdiction, "state law governs the substantive issues and federal law governs the procedural issues, including evidentiary rulings made pursuant to the Federal Rules of Evidence." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (citing *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 425-26 (6th Cir. 2009)).

Under Ohio law, a court may award punitive damages in a tort action only upon a finding of actual malice or aggravated or egregious fraud on the part of the defendant. Ohio Rev. Code § 2315.21[1]. Because § 2315.21 does not define malice, Ohio courts apply the definition of actual malice set forth in *Preston v. Murty,* 512 N.E.2d 1174, syllabus (Ohio 1987). *Estate of Beavers*

---

[1] Section 2315.21 provides, in pertinent part:
(C) Subject to division (E) of this section, punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:
(1) The actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.
(2) The trier of fact has returned a verdict . . . of the total compensatory damages recoverable by the plaintiff from that defendant.

4

*v. Knapp,* 889 N.E.2d 181, 190 (Ohio App. 10th Dist. 2008) (citing *Malone v. Courtyard by Marriott Ltd. Partnership,* 659 N.E.2d 1242 (Ohio 1996)). In *Preston*, the Ohio Supreme Court defined malice as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston,* 32 Ohio St.3d at 1174, syllabus). Because punitive damages are assessed as punishment and not for purposes of compensation, it is necessary that defendants' conduct was "conscious, deliberate or intentional" and that defendants "possess[ed] knowledge of the harm that might be caused by [their] behavior." *Id.* at 1176. *See also Freudeman v. Landing of Canton,* 5:09-cv-00175, 2010 WL 2196460, at *3 (N.D. Ohio May 31, 2010).

Ohio case law makes clear that an award of punitive damages is not justified in a tort action unless there are "aggravated circumstances apart from or surrounding the injury or the actions of the party causing the injury." *Pelkowski v. Nussbaumer*, No. CA-8928, 1993 WL 50723, at *3 (Ohio App. 5th Dist. Feb. 8, 1993) (quoting *Troyer v. Horvath*, 13 Ohio App.3d 155, 157, 468 N.E.2d 351 (1983). The type of aggravated circumstances sufficient to support an award of punitive damages in a motor vehicle accident case may include intoxication and deliberate actions to flee the scene or evade responsibility. *See, e.g., Cabe v. Lunich,* 640 N.E.2d 159, 163 (Ohio 1994) (holding that "evidence that a negligent driver had consumed alcohol prior to a vehicular accident is relevant and admissible to establish whether the driver can be deemed to have acted with actual malice justifying the award of punitive damages," and concurring with courts that recognized where punitive damages are sought based on drunk driving, "'[a]s the degree of impairment by the voluntary consumption of alcohol increases, the need for other aggravating circumstances lessens, and vice versa.'" (citations omitted)); *Cappara v. Schibley,*

709 N.E.2d 117, 120 (Ohio 1999) (evidence that the defendant fled from the accident scene and subsequently failed to disclose his involvement in the accident was admissible for purpose of establishing actual malice); *Estate of Beavers,* 889 N.E.2d at 193 (evidence that the defendant saw the decedent fall from his motorcycle and tumble toward the defendant's truck, the defendant admitted he could have stopped as he saw the decedent coming toward him but instead panicked, accelerated, and left the scene, and the defendant knew he had hit something but continued toward his destination despite thinking that he should not be leaving the scene of the accident, was sufficient to allow jury to determine question of conscious wrongdoing, and evidence that the defendant asked shipper to misstate his arrival time on his delivery documents in hopes of creating an alibi was relevant to malice determination).

### A. Punitive damages claims against defendant Wyatt

Plaintiffs make no allegation of fraud. Accordingly, any punitive damages award in this case is dependent on a finding of malice. Plaintiffs do not aver that defendant Wyatt's conduct was characterized by hatred, ill will or a spirit of revenge, but allege only that Wyatt was "conscious of the harm which was likely to result from the unsafe operation of his truck." (Doc. 36 at 6). Accordingly, only the second type of malice defined in *Preston* is potentially applicable here. The question before the Court therefore is whether based on the undisputed evidence of record, a reasonable jury could find that defendant Wyatt acted with "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *See Preston,* 512 N.E.2d at 1174, syllabus. Plaintiffs have failed to produce any evidence to show that Wyatt's actions demonstrated such malice.

Initially, the Court notes that although plaintiffs cite portions of Wyatt's deposition testimony to allege that he did not provide a full or accurate account of what occurred at the time

of the accident (Doc. 36 at 2), plaintiffs have not filed Wyatt's deposition with the Court and it is not of record. Plaintiffs therefore cannot rely on Wyatt's deposition testimony to show there is a genuine issue of material fact regarding punitive damages.

Plaintiffs also seek to rely on the expert reports of investigators Reed and Rice to create a genuine issue of material fact on the punitive damages claims against defendant Wyatt. Rice and Reed analyzed the crash scene in April 2012 and April 2010, respectively, well after the December 2008 accident occurred.[2] (Doc. 36, Exhs. 1, 2). Their reports include observations as to the physical layout and characteristics of the interstate where the accident occurred and opinions as to the amount of time required to stop a tractor-trailer such as the one operated by Wyatt under the conditions present at the time of the collision. Both investigators also offered opinions concerning Wyatt's degree of negligence. Rice gave the following opinion: "Mr. Wyatt could easily have brought his vehicle to a gentle, slow stop just as he would have arrived at the 1.4" mile marker, or if he chose "to fully apply his brakes, he could have stopped at least 5 times. Instead, Mr. Wyatt wasted each opportunity to avoid this collision by his reckless approach to the MacNeil [sic] vehicle. Thus, Mr Wyatt disregarded the safety of persons or property and his driving conduct can only be described as reckless." (Doc 36, Exh. 1, Rice Report, p. 3). Reed concluded that, "Marty Wyatt operated his tractor-trailer in an unsafe and careless manner without regard for the consequences of his actions and without proper lookout and speed and space management." (*Id.*, Exh. 2, Reed Report, p. 4). Plaintiffs allege in apparent reliance on the investigators' reports that given the design of the interstate and the absence of obstructions at that particular stretch of I-75, Wyatt knew he was likely to encounter slow traffic; plaintiffs' vehicle was plainly visible ahead of him; Wyatt had ample time to bring his truck to a

---

[2] Plaintiffs assert that these investigators have provided "first-hand eyewitness accounts" (Doc. 36 at 6), but in fact neither investigator was an eyewitness to either the accident or its aftermath.

stop to avoid a collision with the vehicle; and he consciously disregarded plaintiffs' vehicle and the opportunity to avoid a collision with the vehicle. (*Id.* at 6-7). Plaintiffs allege that the investigators determined that Wyatt had "plenty of time to avoid a collision" with plaintiffs' vehicle and that "it was only Defendant Wyatt's reckless operation of his truck that caused the crash." (*Id.* at 6, citing Exhs. 1, 2).

The investigators' findings and conclusions are not sufficient to permit a reasonable jury to find actual malice on the part of Wyatt. The findings made by the investigators create an issue of fact as to whether Wyatt would have been able to stop his truck in time to avoid colliding with plaintiffs' vehicle had he been exercising reasonable care at the time of the accident. However, even assuming Wyatt was at fault for the accident for purposes of the present motion, there are no findings in the reports that show there were aggravated circumstances beyond the circumstances giving rise to the accident itself which evidence a "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *See Pelkowski v. Nussbaumer,* No. CA-8928, 1993 WL 50723, at *3; *Preston,* 512 N.E.2d at 1174, syllabus. As something more than "mere negligence" is always required to support an award of punitive damages, the investigators' findings are insufficient to create a genuine issue of material fact on the punitive damages claims against defendant Wyatt. *Preston,* 512 N.E.2d at 1176.

Plaintiffs have not produced any evidence in addition to the findings contained in the investigators' reports to show that Wyatt was aware his actions had a great probability of causing substantial harm. Thus, the Court finds upon a review of the evidence that a reasonable jury could not find that Wyatt acted with actual malice. Defendant Wyatt is entitled to summary judgment on plaintiffs' punitive damages claims.

### B. Punitive damages claims against defendant Bulk First

Punitive damages can be awarded against an employer in a tort action where either (1) the employer's actions directly demonstrated malice or fraud, or (2) the employer authorized, participated in, or ratified such actions by its employee. Ohio Rev. Code § 2315.21(C)(1). Plaintiffs seek damages from Bulk First on the second ground, alleging that Bulk First expressly and impliedly ratified Wyatt's actions when it directed him to operate his truck on I-75. (Doc. 36 at 7). However, as there is no evidence that Wyatt acted with malice, Bulk First cannot be held liable for punitive damages on the theory it authorized, participated in, or ratified actions by Wyatt that demonstrated malice.

Assuming plaintiffs base their punitive damages claims on Bulk First's own actions, plaintiffs have not produced any evidence to show that Bulk First's own acts or omissions with respect to the hiring and retention of Wyatt demonstrated malice. *See Estate of Beavers*, 889 N.E.2d at 201 ("Even where a plaintiff proves a claim of negligent hiring, the plaintiff must establish actual malice before he is entitled to recover punitive damages.") (citing *Stephens v. A-Able Rents Co.*, 654 N.E.2d 1315 (Ohio App. 8th Dist. 1995). To the contrary, the only evidence introduced by plaintiffs concerning Wyatt's driving record and experience shows that at the time of the collision, Wyatt was an experienced tractor-trailer driver who had operated large trucks for ten years, he had obtained his CDL prior to 1992, and he held a CDL Class A professional truck driver's license. (Doc. 36, Exh. 2, Reed Report, p. 2). Thus, plaintiffs' evidence fails to support a claim for punitive damages with regard to Bulk First's hiring and retention of Wyatt. Bulk First is entitled to summary judgment on plaintiffs' punitive damages claims.

9

## V. Conclusion

For these reasons, defendants' motion for partial summary judgment (Doc. 34) is **GRANTED**. Plaintiffs' claims for punitive damages are **DISMISSED**. Defendants' motion to bifurcate plaintiffs' punitive damages claims from the negligence claims (Doc. 23) is **DENIED** as moot.

**IT IS SO ORDERED.**

Date: 1/9/13

Karen L. Litkovitz
United States Magistrate Judge